## GRAHAM et al. v. NELSON.
### No. 1149.

Court of Appeal of Louisiana. First Circuit.
May 22, 1933.

Chas. A. Holcombe, of Baton Rouge, for appellant.

W. G. Randolph, of Baton Rouge, for appellees.

MOUTON, Judge.

August 7, 1931, plaintiffs, by written contract, leased to defendant a steam shovel and drag line for excavating purposes. Under the agreement the lease was to commence on August 10, 1931, and terminate September 23, 1931. The consideration for the lease was fixed at $900, and was made payable on its termination. There are other stipulations in the lease which will be passed over without comment, not being important factors in the issues presented.

The district judge rendered judgment against defendant for $896.96, with legal interest, from which this appeal is taken.

"The lessor is bound to deliver the thing in good condition, and free from any repairs." C. C. art. 2693.

Mr. Graham, one of the plaintiffs, says: This steam shovel and drag line were in excellent condition when leased and delivered.

The outfit was bought by plaintiffs from the Interstate Gravel Company for which Mr. Williams was working in the capacity of superintendent. He testifies that the machine was in first-class order when leased and delivered.

Mr. Clyde E. Smith, examined under commission, who says he had sixteen years' experience with steam shovels, drag lines, and other excavating machines, testifies that on July 20, 1931, he inspected the machine in question with a view of buying it for a company then in process of organization, and that its general condition was then excellent. This examination of the machine was made by Mr. Smith about eighteen days before the lease was executed, and there is no evidence whatsoever to indicate it was damaged or injured in the least between the date of its inspection by Mr. Smith, its lease and delivery.

■ It is therefore clearly established that the machine was in "good condition when delivered," as it was required of plaintiffs, lessors, under the provisions of article 2693, Civil Code.

Mr. Huey, witness for defendant, testifies that, after it was unloaded at Baton Rouge, the point of delivery, and while on its way from there, one of the cables broke and the "bucket hit the ground."

■ The cables and bucket were mere accessories to the machine and the breaking of the cable, and falling of the bucket did not affect the condition of the machine itself within the meaning of article 2693, C. C., and, besides, the breaking of the cable and the dropping of the bucket occurred after the delivery of the steam shovel and drag line.

The warranty imposed by law on the lessor in reference to the thing leased is found in article C. C. art. 2695, which reads, as follows: "The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same."

The evidence shows that the machine in good condition, properly operated, and with the necessary teams and trucks to take care, in time, of the dirt excavated, should excavate from 1,000 to 1,200 cubic yards of dirt, daily.

The contention of the defendant is that from the time he started operation with the outfit he could not excavate over 500 cubic yards of dirt per day. From that fact his deduction is that the machine was only one-third efficient, or two-thirds deficient, and in consequence he is asking a reduction of the rental claimed, in proportion therewith.

There were no vices or defects in the thing at the time of the execution of the lease or its delivery, as before explained.

■ Hence the question is, Did any vice or defect arise thereafter causing the inefficiency complained of by defendant, else he has no claim for indemnification against his lessors, the plaintiffs.

The machine was first operated by Mr. Minor, employee of the defendant, and who had operated it before while it was used in Mississippi by plaintiffs or their vendor, the Interstate Gravel Company. His testimony is that, when he operated it for defendant, it was in a normal or good condition and worked with its usual efficiency.

The testimony of Mr. Daidim, another employee of plaintiffs, is practically to the same effect.

The evidence of Mr. Huey and other witnesses for defendants is that it was impossible to excavate more than 300 cubic yards of dirt per day with the machine, and that it was entirely inefficient. Even if such inefficiency existed, it does not appear that it was caused by any defects or vices in the steam shovel and drag line, the thing leased.

The cause of this lack of power of the machine to bring up the excavation to its capacity, the preponderance of the evidence shows, could have been caused by a dirty boiler or by chemicals in the water used for its operation. The proof shows also that the lack of teams or trucks could have contributed to that result.

Mr. Thorgesson, graduate in mathematical engineering at L. S. U., engaged in working on boilers, examined the machine a few days before the trial. He examined the pistons, cylinders, valves, and clutches of the machine and could find nothing wrong with them. He found the machine in good condition and capable of doing the work for which it was designed. He was assisted in this inspection by Mr. Comeaux, an experienced machinist, who was of the same opinion.

The proof is that there had been no repairs on the machine after it had been returned by defendant to plaintiffs. It is therefore apparent that it was in good condition when leased, as testified to by plaintiffs, and that shortly before it was in excellent condition, as testified to by Mr. Smith, and had so remained after it was used by defendant, as appears from the testimony of Mr. Thorgesson and Comeaux.

■ Such being the situation, it must be held that, if it was inefficient, this was not due to any defects or vices in the machine, but must have been caused by dirt in the boiler, chemicals in the water used, lack of teams

or trucks to handle the dirt excavated by the machine.

. It may be that the failure of the machine to excavate the ordinary amount of dirt per day was due to some other cause which, however, is not explained by the evidence. Whatever was the cause that brought about this inefficiency, there is certainly no proof to show that it was caused by any vices or defects in the thing leased, the only guaranty which is imposed on the lessor under the provisions of article 2695 of the Civil Code.

 The district judge was therefore correct in holding that the defendant was not entitled to the reduction claimed on the amount of the lease for the failure of the machine to excavate the usual number of cubic yards of dirt daily. The judge, however, properly allowed a deduction from the rent for the price of a wire cable, plow steel cable; and correctly refused the cost for welding a caterpillar lug which was broken through the negligence of defendant's servants.

The amount decreed against defendant is supported by the evidence, and in which we find no error.

Judgment affirmed.